FREDERICK L. GILBERT and Another v. DANIEL D. McDONALD and Another.[1]

February 24, 1905.

Nos. 14,197—(213).

**Homestead Filing.**

The assignee of a soldier's additional homestead certificate, upon filing an application for a specific tract of land at the proper government land office, acquires an equitable title therein, which ripens into a legal title, relating back to the date of application, upon issuance of the government patent.

**Conveyance of Interest.**

Such equitable interest may be conveyed by quitclaim deed, and when the patent issues the legal title will inure to the benefit of the grantee.

**Action for Trespass.**

After patent issues, such grantee may maintain an action for damages for trespass upon the land committed after the date of application and before confirmation thereof.

Action in the district court for St. Louis county to recover treble damages amounting to $633.60 for trespass in cutting and removing timber from plaintiffs' land. The case was tried before Dibell, J., and a jury, which rendered a verdict in favor of plaintiffs for $150. From a judgment entered pursuant to the verdict, defendants appealed. Affirmed.

*R. R. Briggs,* for appellants.

*Davis, Hollister & Wilson,* for respondents.

LEWIS, J.

October 26, 1901, Samuel V. Gilbert filed application in the land office at Duluth, as assignee of a soldier's additional homestead certificate to the northwest quarter of the southwest quarter of section 9, town 62 north, of range 1, Cook county, Minnesota. The following November 20 he executed a quitclaim deed of the premises to plaintiffs. Between December 1, 1902, and March 7, 1903, defendants committed a trespass upon the land by cutting and carrying away timber there-

[1] Reported in 102 N. W. 712.

from, which, according to the verdict rendered, was of the value of $150. March 16, 1903, the application was allowed by the General Land Office at Washington, and March 24, 1903, the necessary fees and disbursements were paid at the land office in Duluth, and the usual receiver's certificate issued. In April, 1903, Gilbert died. Patent issued June 1, 1903. This action was commenced June 29, 1903, for the purpose of recovering damages for the trespass. Defendants were total strangers to the title, and defended wholly upon the ground that at the time of the trespass plaintiffs had no title, the same being in the United States.

Plaintiffs cannot maintain this action unless upon the theory that at the time of the execution of the quitclaim deed Gilbert possessed an inchoate or equitable title, which was subject to be conveyed by such a deed, and upon the subsequent issuance of the patent the legal title related back to the application, October 26, 1901, and inured to the benefit of his grantees. It was held in Hastay v. Bonness, 84 Minn. 120, 86 N. W. 896, that, where an application for the entry of lands was legally and properly made under assignment of a soldier's additional homestead right, the right to possession of the land inured to the person making such entry as against a trespasser; that, while the applicant did not acquire full title to the land through her application, yet it entitled her to an inchoate interest therein, with the right of possession as against trespassers, and when the patent issued it related back to the date of the application.

The doctrine of relation and the effect of the receiver's certificate as evidence under section 5754, G. S. 1894, is referred to in the case of Winona & St. Peter R. Co. v. Randall, 29 Minn. 283, 13 N. W. 127, where it was held that a pre-emption certificate issued by the land office was prima facie evidence of title, not only at the time of the entry, but related back to the time of settlement upon the land. Under the authorities referred to, we consider the question settled in this state that when patent issues it furnishes evidence of title in the patentee from the very inception of the proceedings to acquire title.

The next question is: Was the interest which Gilbert acquired under his application of such character that it could be conveyed by quitclaim deed, and did the patent, when issued, inure to the benefit of the grantees? The Revised Statutes of the United States of 1878, § 2448 [2 U.

S. Comp. St. 1901, 1512], provide that when a patent issues to a person deceased at its date title shall inure to and vest in the heirs, devisees, and assignees of such person, the same as if it had been issued to him during life. Consequently the fact that Gilbert died before patent issued has no bearing on the case. If filing a soldier's additional certificate and making application for the land vested an equitable title in Gilbert, such interest could be conveyed by quitclaim deed of the premises, and no other interest was intended to be conveyed except such equitable interest. No after-acquired title was conferred by the patent, and hence a quitclaim was as effective as a warranty deed could have been.

Whether his interest was of an equitable nature, or, as it has been described, an inchoate title, may be determined, we think, from the nature of the certificate. In most of the cases passing upon this question the receiver's receipt or certificate of entry had issued from the land office at the time of the conveyance by the entryman. Landes v. Brant, 10 How. 348; Gibson v. Chouteau, 13 How. 92; Kingman v. Holthaus (C.-C.) 59 Fed. 305. The case of French v. Spencer, 21 How. 228, is very similar to this one. The government had authorized the issuance of land warrants to Canadian volunteers in the war of 1812, and the soldier named in a certain warrant located a tract of land, and a few days thereafter conveyed it; it was held that the deed of conveyance was sufficient to pass the interest of the grantor, and that a patent subsequently issued to the original beneficiary inured to the benefit of the purchaser, and related back to the date of the entry, and that the heir of the grantor was estopped from setting up a legal title under the patent.

Under the provisions of section 2306, Rev. St. U. S. [2 U. S. Comp. St. 1901, 1415], every soldier and sailor who had theretofore entered a homestead for less than one hundred sixty acres was entitled to enter so much land as, when added to the quantity previously entered, should not exceed one hundred sixty acres. When the proper party secures a certificate from the government showing that he is entitled to the additional land, he is not required to comply with the provisions of section 2304 [2 U. S. Comp. St. 1901, 1413], viz., to settle upon the land and cultivate the same for the requisite number of years before making final proof. The certificate itself furnishes the evidence to authorize the

holder to select the lands desired and to make the application by filing the same in the proper land office.   This statute was amended in 1894 by providing that such certificates might be sold and assigned, and the purchasers and assignees were authorized to make entries thereunder, patent to be issued in the name of the assignee.   The effect of these provisions was that upon issuing such a certificate the government bound itself to approve of the entry when made, and to issue a patent thereon.

It seems to us that a selection of land and a filing of the application under a soldier's additional certificate, is just as much the inception of an interest in the land as is the issuance of a land-office certificate in the case of a pre-emptor or homesteader.   Again, the statute itself seems to recognize that such an application vests an equitable interest in the applicant, for the reason that the amendment describes the application as an entry, and Congress did not see fit to restrict the right to alienate the interest between the time of entry and the issuance of a patent.

Upon this view of the title theory, Gilbert was possessed of an interest that could be conveyed by quitclaim deed.   The case of Olson v. Minnesota & N. W. R. Co., 89 Minn. 280, 94 N. W. 871, supports these views, and is not in conflict, for, treating this action as one of trespass quare clausum, the legal title was vested in plaintiff at the time of the commencement of the action.   It is not necessary to decide what the rights of the parties were prior to the issuance of the patent or the receiver's receipt.   It may be that during such period the United States government alone could have prosecuted defendants for the trespass. Such being our conclusion, the documentary evidence was properly received.

Judgment affirmed.