Argued February 16, decided March 16, 1909.

## JOHNSON v. CROOK COUNTY.

[100 Pac. 294.]

TAXATION — INTERESTS IN PUBLIC LANDS — UNPERFECTED CLAIM — EXCHANGE FOR OTHER LANDS.

1. An application under Act of Congress, June 4, 1897, c. 2, 30 Stat. 36 (U. S. Comp. St. 1901, p. 1541), to surrender to the United States unperfected a *bona fide* claim to land within a forest reservation, or to reconvey to the government patented land therein, and to select in lieu thereof vacant nonmineral land of equal area, is an offer to exchange real property, or an interest therein, for other lands to which latter premises no equitable or legal estate or title attaches or vests until the proposition is accepted by the Commissioner of the General Land Office, and, while both the equitable and the legal titles thus remain in the United States, the premises selected are not subject to taxation.

TAXATION — INTERESTS IN PUBLIC LANDS — PAYMENT FOR LAND AND ISSUANCE OF FINAL RECEIPT.

2. When payment of the full consideration for public land has been made, and the receiver of the local land office issues a final receipt, it operates to transfer such an equitable estate in the premises as immediately to render them liable to taxation, though the United States holds the legal title until a patent is executed.

PLEADING—DEMURRER—ADMISSIONS BY DEMURRER.

3. The averments of a complaint must be treated as true when its sufficiency is challenged by demurrer.

TAXATION — INTERESTS IN PUBLIC LANDS — TITLE BY RELATION TO UPHOLD TAX.

4. To uphold a tax on land assessed when the premises were held by the United States, title by relation cannot be invoked by carrying the owner's interest back to the time when he made application for the land, for that principle is one in furtherance of justice, and is only applied to give effect to an instrument, operation of which would otherwise be defeated.

COURTS—FORMER DECISIONS CONTROLLING—OPINION ON QUESTION NOT INVOLVED.

5. Expressions, in an opinion of the Supreme Court, not based on any question involved in the suit, are not controlling.

TAXATION—PAYMENT OF TAXES UNDER PROTEST—RECOVERY.

6. When a tax is paid without compulsion, but with comprehension of its invalidity or means of knowledge thereof, the liquidation is voluntary, preventing a recovery, though payment was made under protest.

TAXATION—PAYMENT OF TAXES UNDER PROTEST—RECOVERY.

7. When a person whose property is illegally taxed is apprehended, or his goods seized, or the tax collector with a warrant threatens immediately to arrest him to coerce payment, or to levy on and sell property to satisfy the tax, or to begin a criminal prosecution for nonpayment, thereby adducing the belief that the menace will be put into execution, in consequence of which it is discharged, payment thus made is involuntary and may be recovered.

TAXATION—PAYMENT OF TAXES UNDER PROTEST—ACTION FOR RECOVERY
—SUFFICIENCY OF COMPLAINT.

8. A complaint to recover taxes claimed to have been paid under compulsion averred that the sheriff, in obedience to a warrant attached to the roll, notified plaintiff of the tax specified, that the exaction was just and due, and, unless it was paid, he would "in due time" collect it by sale of the property, but it nowhere alleged that the sheriff was either in the act of selling, or that he threatened immediately to do so, or that plaintiff, believing that the menace would be instantly executed, was by the abrupt urgency insnared into meeting the payment, or that he had no other expedient of freeing his property from the lien which the levy of the tax created. *Held*, that there was no error in sustaining a demurrer thereto.

From Crook: WILLIAM L. BRADSHAW, Judge.

Statement by MR. CHIEF JUSTICE MOORE.

This is an action to recover taxes alleged to have been paid under compulsion. The complaint states, in effect: That the defendant is a municipal corporation and one of the political divisions of Oregon. That the plaintiff, being the owner of patented land included within the limits of public forest reservations, undertook, on July 16, 1902, to exchange the premises with the United States for unoccupied nonmineral land in Crook County, by filing in the proper local land office his application therefor, and on July 18, 1902, made a similar application for other lieu land in that county. That in the year 1903 the premises so chosen were assessed, and a tax of $364.57 was imposed thereon, which exaction cast a cloud upon plaintiff's title to the property. That the tax roll of the defendant for that year, with a warrant attached, was delivered to the sheriff, who, pursuant to the command, notified plaintiff of the amount of such tax, asserting that it was just and due, and that unless it was paid he would in due time collect it by a sale of the property. That the land so selected was not liable to the assessment placed upon it that year, but notwithstanding that fact, in order to remove such cloud, the plaintiff was compelled to pay the tax, and did so, as follows: March 25, 1904, $177.24; and December 15, 1904, the remainder. That the sheriff issued receipts therefor, having noted thereon, "Paid under protest," which sums of money were

received by the defendant for its use and benefit. That the application of July 16, 1902, was not approved by the Commissioner of the General Land Office until June, 1904, when a patent for the land so chosen was issued, but the selection of July 18, 1902, has never been confirmed. That the plaintiff demanded of the defendant the return of the money so received, but no part thereof has been paid. A demurrer to the complaint, on the ground that it did not state facts sufficient to constitute a cause of action, was sustained. The plaintiff declined further to plead, whereupon the action was dismissed, and he appeals.                          AFFIRMED.

For appellant there was a brief over the names of *Mr. Frank Schlegel* and *Mr. Oliver P. M. Jamison,* with an oral argument by *Mr. Schlegel.*

For respondent there was a brief over the name of *Mr. Frank Menefee,* District Attorney, with an oral argument by *Mr. Andrew M. Crawford,* Attorney-General.

Opinion by MR. CHIEF JUSTICE MOORE.

1. Two questions are presented for consideration: Was the tax void? If so, was it paid under such circumstances as to authorize a recovery thereof? These inquiries will be treated in the order stated. An application, under Act Cong. June 4, 1897, c. 2, 30 Stat. 36 (U. S. Comp. St. 1901, p. 1541), in conformity to rule 18 of the Interior Department, as set forth in the circular of June 30, 1897 (24 Land Dec. Dept. Int. 593), to surrender to the United States an unperfected *bona fide* claim to land within a public forest reservation, or to reconvey to the government patented land therein, and to select in lieu thereof unoccupied nonmineral land of equal area, is an offer to exchange real property or an interest therein for other lands, to which latter premises neither an equitable estate attaches nor in which a legal title vests until the proposal is accepted by the Commissioner of the General Land Office. *Pacific Live Stock Co.*

v. *Isaacs,* 52 Or. 54 (96 Pac. 461) ; *Cosmos Exploration Co.* v. *Gray Eagle Co.,* 190 U. S. 301 (23 Sup. Ct. 692: 47 L. Ed. 1064). While both the equitable and the legal titles thus remain in the United States, the premises selected are not subject to taxation. *State* v. *Itasca Lbr. Co.,* 100 Minn. 355 (41 N. W. 276) ; *Wisconsin R. Co.* v. *Price County,* 133 U. S. 496 (10 Sup. Ct. 341: 33 L. Ed. 687).

2. It is generally held that when payment of the full consideration for public land has been made, and the receiver of the local land office, to evidence that fact, issues a final receipt, it operates to transfer such an equitable estate in the premises as immediately to render them liable to taxation, though the legal title is held by the United States until a patent is executed. *Kansas Pac. Ry. Co.* v. *Prescott,* 16 Wall. 603 (21 L. Ed. 373) ; *Hussman* v. *Durham,* 165 U. S. 144 (17 Sup. Ct. 253: 41 L. Ed. 664). This rule, however, does not apply to the case at bar, for, under the act mentioned, the receiver has no duty to perform respecting land selected, except to transmit the application and accompanying evidence to the Commissioner of the General Land Office for consideration, upon whose approval a patent is issued. Prior to such confirmation the applicant has no interest in the land that is subject to taxation.

3. The law in force when the tax herein is alleged to have been levied required all real property to be assessed on March 1st of each year, at the hour of 1 o'clock A. M. B. & C. Comp., § 3057. It will be remembered that the complaint states that the land selected July 16, 1902, was not approved until June, 1904, and that the selection of July 18, 1902, was never confirmed. Treating as true the averments of the complaint, which is required to be done when the sufficiency of that pleading is challenged by a demurrer, it is manifest that on March 1, 1903, the year when the plaintiff's land was assessed, the equitable estate in, and the legal title to, the premises were held by the United States.

4. Nor can the doctrine of title by relation be invoked to uphold the tax, by carrying the plaintiff's interest in the selected land back to July 16, 1902, when he made the application, for that principle is a fiction of the law which the courts, upon broad rules of equity, apply in furtherance of justice, but never employ except when necessary to give effect to an instrument, the operation of which would otherwise be defeated. *Jackson* v. *Ramsey,* 3 Cow. (N. Y.) 75 (15 Am. Dec. 242) ; *Gilbert* v. *McDonald,* 94 Minn. 289 (102 N. W. 712: 110 Am. St. Rep. 368) ; *State* v. *Itasca Lbr. Co.,* 100 Minn. 355 (111 N. W. 276).

5. Since the plaintiff, in the year 1903, had no equitable interest in the land alleged to have been assessed, the tax levied thereon is void. A diversity of judicial utterance is to be found respecting the manner of paying an alleged illegal tax, so as to authorize a recovery thereof in an action instituted for that purpose. In *Brown* v. *School Dist.,* 12 Or. 347 (7 Pac. 357, 358), which was a suit to enjoin the collection of a tax, a part of which was levied to pay interest on bonds that were claimed to be invalid, it was ruled that in order to obtain the desired relief it was incumbent upon the plaintiffs to pay or tender the part of the tax that they admitted to be due; but, not having done so, the suit was dismissed. In deciding that case Mr. Justice THAYER said : "If the appellants are obliged to pay the portion of the tax they claim to be illegal, they will not necessarily lose the amount paid. They can pay it under protest, in order to relieve their property, and, if it be illegal, can recover it back." As the advice thus given was not based on any question involved in the suit, the language quoted is not controlling herein.

6. We believe that reason supports the rule that when a tax has been paid without compulsion, but with comprehension of its invalidity, or with means of knowledge of its illegality, the liquidation is voluntary and prevents

a recovery of the money disbursed, although the payment may have been made under protest. In an exhaustive note to the case of *Mayor of Baltimore* v. *Lefferman,* 45 Am. Dec. 145, 153, it is said: "The rule allowing a party to recover money which he has once paid, on the ground that it was paid under compulsion, is intended only for the relief of those who are intrapped by sudden pressure into making such payments, and who ·have no other means of escaping an existing or imminent infringement of their rights of person or property. Where a party has time and opportunity to relieve himself from his predicament without making such a payment, by a resort to ordinary legal methods, but nevertheless pays the money, the payment will be deemed voluntary, and he cannot recover it. This is clearly shown in all the cases on the subject." Thus in *Detroit* v. *Martin,* 34 Mich. 170 (22 Am. Rep. 512), the plaintiff's lot was assessed for a street improvement, and he was notified by the city attorney that unless, within a stated time, he paid the burden imposed, his property would be sold to satisfy the demand. At the expiration of the time limited the plaintiff paid, under protest, the sum claimed. The assessment was thereafter decreed to be invalid, and in an action to recover the amount so disbursed it was ruled that the payment was voluntary and the money could not be obtained. In a note to the case of *Phelps* v. *Mayor of New York,* 2 L. R. A. 626, it is said: "A payment is voluntary if made by a party informed of all the facts connected with the subject-matter of the payment, and under the influence of no distress or coercion, even though accompanied with a protest"—citing many cases in support of the text. To the same effect, see the notes to the case of *Phoebus* v. *Manhattan Social Club,* 8 Am. & Eng. Ann. Cas. 667, 669, where it is said: "In accordance with the well-established principle of law that money paid voluntarily and with knowledge of the facts cannot be recovered, it is held that taxes voluntarily paid cannot

be recovered, and, in the absence of statute, that the payment of illegal taxes 'under protest' does not make the payment involuntary so as to authorize the taxpayer to recover the taxes so paid." In the very interesting notes to that case are collated decisions from courts of last resort in many states which sustain the legal principle thus epitomized. So, too, when a person engaged in any enterprise reasonably apprehends that the operation of his business will be suspended, or that, by reason of his failure fully to comply with the demands prescribed by some public service corporation, the enjoyment of his property will be seriously interfered with unless an illegal exaction is liquidated, the discharge thereof under such circumstances is involuntary, and the excessive amount so paid can be recovered in an action of assumpsit instituted for that purpose. *American Brewery Co.* v. *St. Louis,* 187 Mo. 367 (86 S. W. 129); 2 Am. & Eng. Ann. Cas. 821.

7. It is impossible to reconcile the many conflicting decisions that have been rendered on the subject under consideration. The rule is settled, however, that when a person whose property is charged with an illegal tax has been apprehended, or his goods seized, or the tax collector with a warrant threatens immediately to make the arrest to coerce payment, or to levy upon and sell property to satisfy the demand, or to begin a criminal prosecution for non-payment of the tax, thereby inducing the belief that the menace will be put into execution, in consequence of which the invalid exaction is discharged, the payment thus made is involuntary, and the money so disbursed may be recovered. 22 Am. & Eng. Enc. Law (2 ed.) 613; *Southern Ry. Co.* v. *Florence,* 141 Ala. 493 (37 South. 844); 3 Am. & Eng. Ann. Cas. 106.

8. It will be remembered that the complaint herein avers that the sheriff of Crook County, obeying the command of the warrant attached to the roll, notified the

plaintiff that his land was taxed to the extent of $364.57, informed him that the exaction was just and due, and that unless the sum was paid he would "in due time" collect it by a sale of the property. It is nowhere alleged that the sheriff was either in the act of selling the land, or that he threatened immediately to do so; or that the plaintiff, believing that the menace would be instantly executed, was by the abrupt urgency insnared into meeting the payment, or that he had no other expedient of freeing his property from the lien which the levy of the tax created.

In the case at bar, the complaint fails to allege such a state of facts as to bring the action within any of the recognized rules adverted to, and no error was committed in sustaining the demurrer.

It follows from these considerations that the judgment should be affirmed, and it is so ordered.

AFFIRMED.