(March 17, 1911.)

## SAMUEL H. HAYS, Respondent, v. WILLIAM W. WYATT et al., Appellants.

[115 Pac. 13.]

PUBLIC LANDS—HOMESTEAD LAWS—DEATH OF HOMESTEADER—FINAL PROOF — PATENT — RIGHTS OF WIDOW—OF MINOR CHILDREN—OF ADULT CHILDREN—OF DEVISEE—CONSTRUCTION OF STATUTE—RIGHT TO PATENT—EQUIVALENT TO PATENT—PURPOSE OF HOMESTEAD LAW —ENTRYMAN—LAST WILL AND TESTAMENT—RIGHT OF ENTRY—INURES TO DEVISEE.

(Syllabus by the court.)

1. Sec. 2291, Rev. Stats. of the U. S., provides for the issuance of patents to land entered under the homestead laws after satisfactory final proof has been made to the "heirs or devisees in case of the death of the entryman leaving no widow," and under the

provisions of sec. 2292, Rev. Stats. of the U. S., in case both father and mother die leaving a minor child or children, the right and fee inures to the benefit of such minor child or children.

2. It is the practice of the land department of the government to issue patents to the "heirs or devisees" in case of the death of the entryman leaving no widow or minor children, and to leave it to the courts to determine who are the devisees or heirs of the deceased and the extent of their respective interests.

3. The word "devisee" is used to denote one to whom real estate passes by will; and the word "heirs" in its ordinary or customary sense means the kindred of the decedent upon whom the law casts the estate in real property in the absence of a devisee, and has reference to the law of succession.

4. As the deceased homestead entryman, Wyatt, had complied with the homestead law in every respect at the date of his death, had given notice of the time of making his final proof, and all that remained for him to do was to present his final proof, he was then entitled to a patent, and the right to a patent once vested is treated by the general government when dealing with the public lands as equivalent to a patent issued.

5. The homestead laws were enacted, not only to protect the widow and minor children, but to support and assist the entryman in his declining years, and under the facts of this case, he had a right to devise the same.

6. Under the provisions of said secs. 2291 and 2292, it is left to the option of the homesteader either to leave his homestead to his adult heirs, where he has no widow or minor children, without making a will, or, if he prefers to devise the homestead to some one other than his heirs, he may do so, and thereby cut off the adult children.

APPEAL from the District Court of the Third Judicial District, for Boise County. Hon. Fremont Wood, Judge.

Action to quiet title to certain lands. Judgment for plaintiff. *Affirmed.*

Martin & Martin, for Appellants.

The land, under the homestead law, is virtually a gift or donation by the government to the family, and when the title thereto is taken in the name of a single member of the family, it is contemplated by the act that it is for the benefit

of all. (*Newkirk v. Marshall*, 35 Kan. 77, 10 Pac. 571; *Adams v. Church*, 193 U. S. 510, 24 Sup. Ct. 512, 48 L. ed. 769; *Moss v. Dowman*, 176 U. S. 413, 20 Sup. Ct. 429, 44 L. ed. 528.)

The entryman had no estate in the land which he could pass by will from the fact of his having lived on it more than five years that he would not have had had the time been only one year or one month. (*McCune v. Essig*, 122 Fed. 588, 59 C. C. A. 429, 199 U. S. 382, 26 Sup. Ct. 78, 50 L. ed. 237; *Hall v. Russell*, 101 U. S. 503, 25 L. ed. 829; *Hershberger et al. v. Blewett*, 55 Fed. 170; *Chapman v. Price*, 32 Kan. 446, 4 Pac. 807; *Bolton v. Water Power Co.*, 10 Wash. 246, 38 Pac. 1043.)

An entryman, prior to his final proof, has no devisable interest in the land, but the land must go according to the acts of Congress, and the person taking the same upon the death of the entryman takes as a donee of the government, and not by descent or by devise, and the state laws in regard to the descent of property have no application to a public land entry. (*Council Imp. Co. v. Draper*, 16 Ida. 541, 102 Pac. 7; *Demars v. Hickey*, 13 Wyo. 371, 80 Pac. 521, 81 Pac. 705; *Marley v. Sturkert*, 62 Neb. 163, 89 Am. St. 749, 86 N. W. 1056; *Towner v. Rodegeb*, 33 Wash. 153, 99 Am. St. 936, 74 Pac. 51; *Hall v. Russell*, 101 U. S. 503, 25 L. ed. 829; *Hutchinson Inv. Co. v. Caldwell*, 152 U. S. 65, 14 Sup. Ct. 504, 38 L. ed. 356.)

The placing of the word "heirs" before the word "devisee" in the homestead act is significant and was done for the purpose of indicating the order in which they might take. (*Hutchinson Inv. Co. v. Caldwell, supra.*)

Henry Z. Johnson and S. H. Hays, for Respondent.

"Sec. 2291, U. S. Rev. Stats., provides for the issuance of patent after satisfactory final proof to the 'heirs or devisee,' in case of the death of the entryman leaving no widow or minor child." (*Agnew v. Morton*, 13 L. D. 228; *In re Jones*, 1 L. D. 64.)

It is left to the local courts to decide who are the heirs and their respective interests. (*In re Huls,* 13 L. D. 49.)

Since the devisee is a person specially nominated by the decedent to take his estate, he, as such special nominee, takes precedence over the heirs, who only take the estate in the absence of a devise. The use of the word "devisee" in the statute is a specific recognition of the right to dispose of the property by will. (*Bernier v. Bernier,* 147 U. S. 242, 13 Sup. Ct. 244, 37 L. ed. 152.)

The rights of a devisee have uniformly been recognized by the land department. (*In re Sarah Leonard,* 1 L. D. 41; *In re Dodge,* 1 L. D. 47; *In re Jones,* 1 L. D. 65; *In re Beckner,* 6 L. D. 134; *Alcott's Heirs,* 13 L. D. 131; *Brown v. Hughes,* 17 L. D. 156.)

There are various rules governing other land entries, but the homestead law is the only one mentioning a devisee. (*Bergstrom v. Svenson* (N. D.), 126 N. W. 497; *Cooper v. Wilder,* 111 Cal. 191, 52 Am. St. 163, 43 Pac. 591.)

It is not claimed by the respondent that the estate is devised or descends in the ordinary sense, but that the estate goes to the persons named in the statutes of the United States as the grantees of the government. (*Demars v. Hickey,* 13 Wyo. 371, 80 Pac. 521, 81 Pac. 705; *McCune v. Essig,* 122 Fed. 588, 59 C. C. A. 429, 199 U. S. 382, 26 Sup. Ct. 78, 50 L. ed. 237; *Gjerstadengen v. Van Duzen,* 7 N. D. 612, 66 Am. St. 679, 76 N. W. 233; *Council Imp. Co. v. Draper,* 16 Ida. 541, 102 Pac. 7.)

The right to a patent once vested is treated by the government when dealing with the public lands as equivalent to a patent issued. (*Stark v. Starr,* 6 Wall. (U. S.) 402, 18 L. ed. 925.)

SULLIVAN, J.—This action was brought to quiet title to certain real estate situated in Boise county. The defendants, William W. and J. Lee Wyatt, and Verina E. Wyatt Stafford, are the children of Anneas Wyatt, deceased, the entryman of the land embraced in the controversy.

It is alleged in the complaint that Anneas Wyatt, deceased, settled upon said land in the year 1885 with the purpose and intent of claiming the said premises as a homestead under the laws of the United States; that he resided on said premises continuously from the year 1885 to the time of his death on December 26, 1899; that at the time of his first settlement thereon, said lands were unsurveyed, and that thereafter in the year 1896 they were surveyed and plats thereof approved and filed with the surveyor general of the United States for the state of Idaho; that said deceased thereupon on the 3d day of October, 1896, made a homestead entry on said lands; that on December 1, 1899, he gave notice in the manner prescribed by law that he would thereafter make his final proof for said lands for the purpose of procuring a patent therefor; that prior to the date on which said final proof was to be submitted to the register and receiver of the United States land office, he died; that on the 14th day of February, 1899, he made and executed his last will and testament whereby he gave, bequeathed and devised to one James Walton all of his estate, both real and personal, with certain exceptions specified in said will; that said will was on January 25, 1900, offered for probate in the probate court of Boise county, that being the county in which said land is situated, and the county of the residence of said deceased; that after due notice was given and due proof made, said will was admitted to probate by the probate court of said Boise county; that no contest of said will or the validity thereof was ever filed and no appeal has ever been taken from the order of the probate court admitting said will to probate; that said order is still in full force and effect; that on the 28th day of October, 1900, said James Walton, devisee, under said will, made final proof upon said homestead entry and in due course a patent for said lands was issued by the United States, which patent granted said lands in the manner customary in such cases, to wit: "unto the said heirs or devisees of Anneas Wyatt"; that after making said final proof, said Walton granted, bargained, sold, conveyed and confirmed unto Samuel H. Hays, the plaintiff and respondent in this action, the said described

premises; that the defendants are all of the children of said deceased, being the children of said Wyatt and his divorced wife, and that each and all of said children were at the time of the death of said Wyatt above the age of thirty-seven years; that about the year 1886, said Wyatt was divorced from his wife, suit having been commenced in the year 1385, and at the time of his death he had no wife and left no widow surviving him; that said lands were in the possession of said Wyatt at the time of his death, and that the defendants claimed some interest in them, and respondent prayed that they be required to set forth the nature of their claim to said premises and that the title be quieted in the respondent. A copy of said will is attached to the complaint and made a part thereof, and it appears that at the time of making said will said deceased was of the age of seventy-seven years, and the first bequest is as follows:

"I give and bequeath unto my friend, James Walton, who has aided and befriended me when all others have refused, all of my property, real and personal, wheresoever situated except the special bequests, hereinafter in the next clause contained," and bequeaths thereby to each of his children the sum of one dollar.

A copy of the decree of divorce above referred to was also attached to and made a part of the complaint and is dated April 20, 1886. The said deceased was the defendant in that action. After decreeing the divorce between the parties, certain personal property, consisting of a band of horses, some cattle, hogs and hay, was directed to be sold and one-half of the proceeds thereof to be paid to the wife and the other half to defray the expenses of the suit and to be paid to the plaintiff's attorneys. The last clause of said decree is as follows: "That the real estate and all personal property, except the horses, cattle, hogs and hay above mentioned, and also the household goods now in the possession of the plaintiff, are hereby decreed to the defendant; and also, four horses to be selected by the defendant, and the costs in action are decreed to defendant."

To the complaint in this action the defendants filed a general and special demurrer, which was overruled by the court, and they thereafter refused to answer. The case was tried by the court and judgment was entered in favor of the plaintiff and the title to said premises quieted in him. This appeal is from the judgment.

The question to be determined upon this appeal is whether under the provisions of secs. 2291 and 2292, Rev. Stats. of the United States, under the facts of this case the devisee, Walton, took said land to the exclusion of said children of the deceased, or whether the children took the land to the exclusion of said devisee. In other words, had the entryman the power by will to devise said land to said Walton?

Sec. 2291 is as follows: "No certificate, however, shall be given, or patent issued therefor, until the expiration of five years from the date of such entry; and if at the expiration of such time, or at any time within two years thereafter, the person making such entry; or if he be dead, his widow; or in case of her death, his heirs or devisee; or in case of a widow making such entry, her heirs or devisee, in case of her death, proves by two credible witnesses that he, she, or they have resided upon or cultivated the same for the term of five years immediately succeeding the time of filing the affidavit, and makes affidavit that no part of such land has been alienated, except as provided in sec. 2288, and that he, she, or they will bear true allegiance to the government of the United States; then, in such case, he, she, or they, if at that time citizens of the United States, shall be entitled to a patent, as in other cases provided by law."

Sec. 2292 is as follows: "In case of the death of both father and mother, leaving an infant child or children under twenty-one years of age, the right and fee shall inure to the benefit of such infant child or children; and the executor, administrator, or guardian may, at any time within two years after the death of the surviving parent, and in accordance with the laws of the state in which such children, for the time being, have their domicile, sell the land for the benefit of such infants, but for no other purpose, and the purchaser shall

acquire the absolute title by the purchase, and be entitled to a patent from the United States on the payment of the office fees and sum of money above specified.''

The patent from the government conveyed the lands as above stated, ''unto the said heirs or devisees of Anneas Wyatt.'' It is the custom of the general land office of the United States to issue patents in such cases in that form.

In the case of *Agnew v. Morton,* 13 L. D. 228, it is said:

''Section 2291 of the Revised Statutes provides for the issuance of patent, after satisfactory final proof, to the 'heirs or devisee,' in case of the death of the entryman leaving no widow.''

Sec. 2292 provides that in case of the death of both father and mother, leaving an infant child, the right and fee shall inure to the benefit of the infant child.

In the *Huls Case,* 13 L. D. 49, it was said that the patent should be issued in the name of the heirs generally, leaving it to the local courts to decide who are the heirs and their respective interests.

It is the practice of the Land Department of the Interior to issue patents in this form, leaving it to the local courts to determine who are the devisees or heirs and the extent of their respective interests. In this case there is no question as to the validity of the will. It has been admitted to probate by the proper court and was not contested. There is no question about the identity of the devisee or the extent of his interest. Unless there was a want of power on the part of the deceased, said land passed by virtue of the terms of said will, the patent and the statute, to the devisee, Walton, and from him by deed to the respondent.

It is contended that nothing passed to the devisee by virtue of the patent, but that the patent conveyed the land to the children of the deceased. We must look to the statute itself for the power granted and also for the limitations, if there are any imposed. Said sec. 2291, Rev. Stats., provides that after the prescribed time the patent shall issue ''to the person making such entry, or if he be dead, to his widow, or in case of her death, his heirs or devisees,'' upon proper proof

being submitted. In this case the entryman being dead, and there being no widow, the patent was issued to the "heirs or devisees" of the deceased. The provisions of said section are clear, and the construction given it should be fair and reasonable rather than strained.

The word "devisee" is used to denote one to whom real estate passes by will. (Sec. 2, Page on Wills.) The word "heirs" in its ordinary or customary sense means the kindred of the decedent upon whom the law, immediately upon his death, casts the estate in real property in the absence of a devise. (*Appeal of Dodge,* 106 Pa. 216, 51 Am. Rep. 519; vol. 4, Words and Phrases, 3241.) The devisee is a person specially nominated by the decedent in his will to take his estate. He, as special nominee, takes precedence over the heirs, who only take the estate in the absence of a devise. However, appellant contends that the right to devise property under the provisions of said sections of the statute is limited to cases in which there are no heirs. We find no such limitation in the statute. There being no minor children, said sec. 2291 gives a priority in favor of the widow over the heirs or devisees, and sec. 2292 gives a priority in favor of infant children, and in construing those two sections together, the supreme court of the United States held in *Bernier v. Bernier,* 147 U. S. 242, 13 Sup. Ct. 244, 37 L. ed. 152, that the homestead would descend equally to minor and adult children. In that case there were five minors and five adults and no widow or devisee. Taking the provisions of the two sections as they stand, under that decision, they recognize the rights accruing to a homestead in the following manner: First, to the widow, if there be one; second, to the minor children, and if the children are partly minors and partly adults, then in equal shares to each without regard to minority; third, to the devisee, if there be one; fourth, to the heirs.

In the Bernier case, Edward Bernier made a homestead entry on the land in controversy under the provisions of the homestead law of the United States, on the 24th of May, 1875. At that time he was a widower, his wife having died in April, 1872. He occupied the premises as a homestead until his

death on June 17, 1876.   It will thus be seen that a little less than thirteen months passed after the entry until his death. He left ten children surviving him, five of whom were at the time of his death over twenty-one years of age, and five were under twenty-one years.   In October, 1876, one of the adult heirs, on behalf of all of the ten heirs, made the required proof for commuting the homestead entry, paid the minimum price for the land and received a certificate entitling him to a patent therefor.   This certificate was never canceled nor was any proceeding taken for its cancellation, nor was any notice given of a contest respecting it, nor was any irregularity in its issue alleged.   The only proof of occupation was made by Samuel F. Bernier, one of the adult heirs, and the only sums paid for the land were advanced by him on behalf of all of the heirs.   Notwithstanding those facts, sometime in April, 1877, a second certificate was issued to the minor heirs of Edward Bernier, which was issued upon the commutation proof presented by said Samuel F. Bernier, as above stated, and on the 25th of said month, a patent was issued to them.   The bill in the Bernier case alleged that all of the steps to change the filing on the lands from a pre-emption claim to a homestead entry and in commuting the homestead entry and securing a patent for the lands were taken through an attorney at law, who was acting for the said heirs of Edward Bernier; that when he received the patent he supposed the same ran to those heirs, and without examining it or discovering his mistake, he placed the same on record and the mistake was only recently discovered; that for many years previous to said discovery all of the heirs, including the minors, treated the land as their joint property, but since the discovery of the mistake, and only since, the minor heirs pretend to claim that they are the sole and only heirs, and claim that the complainants have no interest, right or title in the lands, which claim complainants charged was a fraud upon their rights and worked a manifest wrong and injustice to them.

Under that state of facts the court held, under the provisions of said secs. 2291 and 2292, that the title vested in all of

the heirs of said Bernier at his death, the adults as well as the minors. In the Bernier case there were minor heirs, hence under the provisions of said sec. 2292, the decedent had no authority to devise land included in said homestead entry, nor did he endeavor to do so. And it appears from the facts in that case that one of the adult heirs, on behalf of all of the ten heirs, made the required proof for commuting said homestead entry, paid the minimum price for the land and received the certificate entitling him to a patent therefor. Said certificate was never canceled; no proceeding was ever brought to cancel it. The property was treated for years as a part of the estate of the deceased. One of the adult heirs took charge of the whole estate, including the land in controversy, paid the taxes thereon and took care of the minors and remained in possession of the premises in controversy for years and until that action was brought. Under that state of facts, the supreme court of the United States held that the adult and minor heirs, under the provisions of said sections of the Revised Statutes, were entitled each to an equal share in said lands.

The homestead entryman in the Bernier case had only lived on the land for a little more than a year after the date of his entry and before his death; while in the case at bar, the entryman had resided on the land from 1885 until 1899, the latter being the year of his death. It appears that he had complied with the homestead laws in regard to residing on the land and the improvement of it, and had given notice of final proof, but before the date for the final proof, died. Here the entryman had fully complied with the law with the exception of making final proof. Upon presenting the required final proof, he would have been entitled to a patent. The right to a patent once vested is treated by the government when dealing with public lands as equivalent to a patent issued. (*Stark v. Starr*, 6 Wall. (U. S.) 402, 18 L. ed. 925.) At the date of Wyatt's death he was entitled to a patent. His wife had procured a divorce from him about fourteen years prior to his death. His three children had deserted him or left him alone, and at the age of seventy-eight he died and would have no

doubt suffered penury and want in his old age had it not been
for his friend, the said James Walton, to whom the old man
refers in his last will as one "who aided and befriended me
when all others have refused." The homestead law was not
only enacted to protect widows and minor children, but to
assist the entryman in his declining years when deserted by
his children and other kindred. When so deserted, he had
the right to dispose of the same in such manner as would keep
him from becoming an inmate of the county poorhouse. Adults
are not considered dependents on the father under the home-
stead laws, and it is the widow and minors for whom the law is
most solicitous, and for the entryman when he has become old
and enfeebled. The youngest of said children was of age
when Wyatt died, and under the law was entitled to enter a
homestead of his own, and under the provisions of said secs.
2291 and 2292, the entryman had the right to devise said land
to Walton, he having no widow or minor children at the date
of his death. Said adult children had no such right thereto
as would defeat said devise. In the *Dodge Case*, 1 L. D. 47, it
was held that a devisee of a homestead claimant is entitled to all
privileges that would descend to the heirs.

In the *Beckner Case*, 6 L. D. 134, it was held that where
a homestead settler died prior to a survey of the land, the
right of entry inures to his devisee. (See, also, Instructions,
9 L. D. 452.)

Neither the heirs nor the devisees under the statute in ques-
tion takes by virtue of the law of the state in which the land
is located. They take their right by being named in the
United States statutes as successors of the original entryman,
it being left to the local courts to identify them and the extent
of their interests.

In *Eberhardt v. Heirs of Selich*, 33 L. D. 342, it was held
that where an instrument purporting to be the last will and
testament of a deceased homestead entryman is duly admitted
to probate in the proper county, such instrument will be rec-
ognized by the department as legally established. The last
will and testament of the deceased entryman in the case at
bar was duly admitted to probate in the probate court of

Boise county, and that court held that Walton, the grantor of the respondent, was the devisee under said will.

There are various rules governing other land entries, but the homestead law is the only one mentioning a devisee. It is not claimed by the respondent that the estate is devised or descends in the ordinary sense under the laws of this state, but, as held by various decisions, the estate goes to the person named in the statutes of the United States as the grantees of the government. (See *Demars v. Hickey,* 13 Wyo. 371, 80 Pac. 521, 81 Pac. 705.)

In *McCune v. Essig,* 122 Fed. 588, 59 C. C. A. 429, 199 U. S. 382, 26 Sup. Ct. 78, 50 L. ed. 237, the court held that a homestead settler had no devisable or descendable interest until he had completed the term of residence required to entitle him to make final proof, and in case of his death before that time, the patent to his widow who completes the residence and makes final proof conveys the land to her absolutely and no interest therein passes to the children of her deceased husband.

Some reliance is placed by appellants upon the case of *Chapman v. Price,* 32 Kan. 446, 4 Pac. 807. That was an action in ejectment. A patent had been issued to the heirs of Applegate, and the court held that in an action in ejectment by the executors, as it appeared they had no legal title, the patent having issued to the heirs, that the demurrer to the complaint was properly sustained. The will in that case devised the property to the executors in trust to sell the property, pay the debts of the decedent and divide the surplus among the heirs. In that case the court cites sec. 2296, U. S. Rev. Stats., to the effect that no land acquired under the homestead laws shall be liable for any debts contracted prior to the patent. Under the will in the Chapman-Price case, the debts were to be paid before the heirs took their shares. Since the devise was to the executors as trustees only, it would seem that the children were probably minors, although there is nothing in the case to show their ages. It is not claimed on the part of respondent that Wyatt had, in the ordinary sense of that term, a devisable estate, but simply in accordance with

the uniform decisions upon the subject, he had a right to devise the property, and that the devisee takes as a grantee from the United States by virtue of being nominated in the will, the office of the state statute being only to identify the person and the extent of his interest. Wyatt having resided upon the land the full length of time required by the statute, and having performed all acts required by the statute, was at the time of his death entitled to a patent upon presenting his final proof, and since the right to a patent once vested is treated by the government when dealing with the public lands as equivalent to a patent issued, and he having no widow or minor heirs, and having a devisable interest in said land, had full right to devise it as he did.

If the position taken by counsel for appellant were correct, Congress would certainly not have enacted sec. 2292 and limited its operation to infant "children under twenty-one years of age." Sec. 2291 provided in unqualified terms that the homestead should go to the widow upon the death of the entryman if he left a widow surviving him. This was done on the theory that the widow would then be the head of the family and that she would be first entitled to the homestead. It further provided that in case the entryman should leave no widow surviving him, the homestead should go to his "heirs or devisees." This left the matter entirely at the option of the entryman, in case he left no widow surviving him, as to whether he would leave his homestead to his heirs or his devisees. In other words, he could devise the homestead and thereby cut off the heirs. Congress, therefore, thought it necessary to add sec. 2292 and thereby prevent the entryman from devising the homestead away from the minor heirs in case he left no widow. But Congress said nothing in this section about protecting heirs who are over the age of twenty-one years. It therefore seems clear to us that Congress intended in case of the death of the homesteader to first protect the widow who would be the remaining head of the family and would be responsible for the protection and maintenance of the minor children; that in case he left no widow surviving him, the homestead should then be left to those who would

be dependent upon the patrimony for their protection and education. Congress was clearly not legislating by either sec. 2291 or 2292 for the specific protection of heirs who had attained their majority—those who had arrived at their maturity and were therefore supposed in law to be able and capable of earning their own livelihood and taking care of themselves. After reaching that age, they would be in a position to take homesteads for themselves. So it appears to us that Congress intended to leave it to the option and pleasure of the homesteader either to leave his homestead to his adult heirs without making any will, or, if he preferred to devise the homestead to some one else, he might do so and thereby cut off the adult heirs.

The judgment must be affirmed, and it is so ordered, with costs in favor of respondent.

Ailshie, Presiding J., concurs.